Mary Ann JAY and Michael H. Jay, as legal representatives of Matthew Michael Jay, deceased, Petitioners–Appellants,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.

No. 92–5098.

United States Court of Appeals, Federal Circuit.

July 13, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 14, 1993.

Andrew W. Dodd, of Andrew W. Dodd, P.C., Torrance, CA, argued, for petitioners-appellants.

Alfonso J. Montano, Atty., Dept. of Justice, of Washington, DC, argued, for respondent-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., Helene M. Goldberg and John Lodge Euler, Attys.

Before RICH, ARCHER, and LOURIE, Circuit Judges.

ARCHER, Circuit Judge.

Mary Ann Jay and Michael H. Jay (the Jays), on behalf of Matthew Michael Jay, deceased, appeal from the judgment of the United States Claims Court,[1] No. 90–534V (filed Feb. 21, 1992), sustaining the decision of the special master denying compensation under the National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C. §§ 300aa–10 to 300aa–34 (1988 & Supp. III 1991), for the death of Matthew allegedly caused by a diphtheria-pertussis-tetanus (DPT or DTP) vaccine. The special master granted summary judgment in favor of the Department of Health and Human Services (HHS) and denied summary judgment in favor of the Jays. We reverse and remand.

I.

Matthew was a healthy child, less than four months old and having a normal medical history. On January 29, 1974, Matthew received a DPT vaccination and died eighteen hours later. His parents, the Jays, testified that after Matthew was vaccinated, for over six hours he screamed inconsolably as though he was in pain, alternating with periods of crying and sleep in a limp condition. Matthew did not awake to nurse that night as he normally did, and Matthew's mother discovered him early the next morning in his crib not breathing with a blue area around his lips. When Matthew's mother took Matthew from the crib she noticed that he felt limp "like a rag doll." A registered nurse, she began cardiopulmonary resuscitation on Matthew, and the artificial resuscitation was continued in the ambulance as Matthew was taken to the hospital. But at the hospital

---

1. Effective October 29, 1992, the United States Claims Court has been renamed the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

Matthew died. The autopsy later performed on Matthew could find no cause of death, and therefore attributed it to Sudden Infant Death Syndrome.

The Jays petitioned for compensation, alleging that the DPT vaccine in fact caused the death of Matthew, *see* 42 U.S.C. § 300aa–11(c)(1)(C)(ii), and that a table injury occurred—shock collapse or hypotonic-hyporesponsive collapse (shock collapse), *see id.* §§ 300aa–11(c)(1)(C)(i), 300aa–14(a)(I)(C). They later amended their petition to assert an encephalopathy, *see id.* § 300aa–14(a)(I)(B). HHS filed a report upon the petition. *See* Vaccine Rule 4(b). In the report, Dr. Mortimer, a medical expert for HHS, disputed the shock collapse, arguing that it would be incompatible with intermittent crying as alleged by the Jays.

After a first hearing at which the Jays testified to the aforementioned facts, the Jays moved, unopposed, for summary judgment. This motion was based on the unremarkable pre-vaccine medical records of Matthew, the parents' testimony and affidavits, the autopsy report, and a declaration of their medical expert Dr. Cox. Dr. Cox stated that, based upon the circumstances of Matthew's case and Matthew's medical records, "the death of Matthew Michael Jay on January 30, 1974 was medically caused by immunization with D.P.T. vaccine on January 29, 1974." The special master discounted the medical opinion as nonspecific, and denied the Jays' motion based on 42 U.S.C. § 300aa–13(a)(1) which precludes the special master from finding in favor of a petitioner "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion."

The Jays then submitted a supplemental declaration of Dr. Cox, and again moved for summary judgment. In his declaration, Dr. Cox stated that, based on the extended period of intermittent crying, the limpness, and the death following the vaccine, Matthew suffered an encephalopathy and that the vaccine caused his death. The special master found

that the medical opinion relied primarily on the symptoms of "unusual, inconsolable screaming" and limpness, which although consistent with an encephalopathy and "not trivial," were "not dramatic either." The special master thus denied summary judgment on the ground that "crying plus limpness [does not] establish[ ] an encephalopathy as a matter of law."

A second hearing was then held, at which Dr. Cox testified similarly to his declaration. The parties then cross-moved for summary judgment. The special master held that Dr. Cox assumed that an encephalopathy had occurred based on extended crying following the vaccine, and that this evidence is statutorily insufficient to establish an encephalopathy. 42 U.S.C. § 300aa–14(b)(3)(A) ("Signs and symptoms such as high pitched and unusual screaming, [and] persistent unconsolable crying ... are compatible with an encephalopathy, but in and of themselves are not conclusive evidence of encephalopathy.").[2] The special master then found that Matthew

> showed extensive, unusual crying, and transient episodes of limpness, ... may have fed somewhat less than normal (Tr. 43), and was responsive to his environment (Tr.44). With an encephalopathy we have typically seen at least one dramatic aspect. This aspect is what separates the events from the normal range of DTP reactions. Here, though, the only reaction that even approaches dramatic is the crying, which, as noted, is insufficient to establish an encephalopathy.

The special master concluded that the Jays did not establish that an encephalopathy occurred, and that this proof was a necessary "foundation" to Dr. Cox's testimony. Consequently, the special master denied the Jays' motion for summary judgment and granted HHS summary judgment, dismissing the petition for compensation. The Claims Court, upon review of the petition, held that 42 U.S.C. § 300aa–13(b)(1) required the special master to make findings of fact even upon

**2.** The special master discredited Dr. Cox's reliance on the signs of limpness, finding that he lacked the background to attribute the limpness to an encephalopathy as opposed to a fever.

Strangely, it was undisputed that the DPT caused the fever, and thus in either event, it is undisputed that the DPT shot caused the limpness.

motion for summary judgment.[3] The Claims Court then upheld the finding of the special master that the Jays had not demonstrated an encephalopathy by a preponderance of the evidence and sustained his decision dismissing the petition.

## II.

A. The Claims Court having upheld the determination of the special master, "we review *de novo* the Claims Court's determination as to whether or not the special master's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Hines v. Secretary of the Dep't of Health and Human Servs.*, 940 F.2d 1518, 1524 (Fed.Cir.1991); *see Bradley v. Secretary of the Dep't of Health and Human Servs.*, 991 F.2d 1570, 1574 (Fed.Cir.1993).

In this case the special master granted summary judgment on the issue of causation in favor of HHS and against the Jays. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rules of the United States Claims Court (RUSCC), Rule 56(c); *see* Vaccine Rule 8(d) (authorizing summary judgment pursuant to RUSCC 56); *Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987) (standards for RUSCC 56 are the same as those for Rule 56 of the Federal Rules of Civil Procedure).

The party moving for summary judgment "bears the burden of demonstrating absence of all genuine issues of material fact." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed.Cir.1985) (in banc). There is no genuine issue of material fact where the evidence presented is insufficient to permit a reasonable factfinder to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When ruling on summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are ... not those of a judge.... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. The summary judgment inquiry in essence is whether the evidence presents a sufficient disagreement of fact to require submission to the factfinder or whether it is "so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. Because summary judgment raises only questions of law, our review of the grant and denial in this case of summary judgment is *de novo*.

B. The Claims Court held that 42 U.S.C. § 300aa–13(b)(1) required the special master to resolve factual disputes, weigh the evidence, and make credibility determinations even on motion for summary judgment. As a result, the Claims Court viewed the special master's disposition of the summary judgment motions as ultimate determinations of fact and therefore reviewed the special master's disposition merely for factual arbitrariness rather than legal correctness. The Claims Court's authorization of factfinding on summary judgment however is imprudent and illogical: either a case is decided by summary judgment or it is not. If the statute precludes the special master from making a determination without making factual findings, then the statute precludes summary judgment.

Contrary to the assertion of HHS, the Vaccine Rules do not authorize factfinding on summary judgment. Vaccine Rule 8(d) permits the special master to decide a case on summary judgment, "adopting procedures set forth in RUSCC 56 modified to the needs of the case." HHS argues that the Vaccine Rules permit the special master to "modify" summary judgment to dispense with waiting

---

**3.** 42 U.S.C. § 300aa–13(b)(1) provides:

(1) In determining whether to award compensation ..., the special master or court shall consider ...

(A) any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record....

....

Any such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court. In evaluating the weight to be afforded to any such diagnosis, [etc.], the special master or court shall consider the entire record and the course of the injury, disability, illness, or condition....

until the end of the case to find the facts. This is incorrect. Vaccine Rule 8(d) allows the "procedures set forth" in RUSCC 56 to be modified. RUSCC 56 sets forth various procedures, but does not mention the prohibition on factfinding. Vaccine Rule 8(d) therefore cannot be read to authorize factfinding on summary judgment. To allow a special master to weigh and find facts prior to the end of the case (effectively at an arbitrary point in the litigation dictated by the summary judgment movant) would raise serious due process concerns. *Cf. Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944) (factfinding on summary judgment in a civil action would deprive litigants of their right to trial by jury).

Thus, as our previous discussion makes clear, in vaccine cases, as in other cases, summary judgment is summary judgment. If to dispose of the case the special master must resolve conflicts of fact or weigh conflicting evidence, or is statutorily constrained to do so, he or she may not render summary judgment. We will therefore treat this appeal as any other involving a grant of summary judgment, determining *de novo* whether there exist genuine issues of material fact and whether one of the parties is entitled to judgment as a matter of law.

### III.

■ A. Notwithstanding two hearings and numerous written submissions, HHS has

not contradicted the Jays' evidence on the issue of causation, with the exception of the shock-collapse issue and the testimony regarding limpness. The shock collapse issue is not before us in this appeal,[4] and as we discuss *infra*, the dispute as to limpness does not preclude a determination as a matter of law in this case. HHS has not challenged, nor did the special master doubt, the credibility of the Jays. Consequently, the parties are not disputing nor is there any dispute as to any facts material to the issues involved in this appeal.

■ We are convinced that the special master erred in granting summary judgment that Matthew did not suffer an encephalopathy, and in failing to grant summary judgment that he did suffer an encephalopathy. The special master, losing sight of the forest for the trees, ignored entirely the fact of Matthew's death. Dr. Cox did not *assume* that an encephalopathy had occurred. Rather, he testified that an encephalopathy occurred based on Matthew's entire history including the fact of death—an otherwise healthy child; a DPT shot; over six hours of intermittent screaming; death; and all within one day.[5] We can find nothing in the Vaccine Act which precludes death from being used as evidence of a table injury, here encephalopathy.[6] The "dramatic aspect" which the special master was searching for was immediately before him: Matthew died

---

4. Although they asserted shock collapse in their petition, the Jays did not pursue or defend this theory either in their case in chief or on the motions for summary judgment. We thus conclude, as did the Claims Court, that it was abandoned. Alternatively, the Jays now argue for the first time that death within three days of vaccination constitutes shock collapse as a matter of law. Because this complex legal issue was not raised below we do not consider it in this appeal. *See Fruin–Colnon Corp. v. United States*, 912 F.2d 1426, 1429 (Fed.Cir.1990).

5. Dr. Cox testified in part:

Q And doctor, is it your testimony in this case, based on reasonable medical probability, that the pertussis component of the DPT caused this child's death?
A Yes, sir.
Q And is that generally referred to as post-vaccine pertussis encephalopathy?
A Yes, sir.

. . . .

Q So then, the history and the fact that the child received a DPT shot, that would be another thing that you would rely on?
A That's right. It's the DPT shot, the subsequent crying, the unconsolable crying for six or more hours, with periodic periods of screaming, and then the subsequent death all occurring within a twenty-four-hour period of time. That's how I put the case together.
Tr. of Hearing, August 8, 1991, at 27, 36.

6. To the contrary, 42 U.S.C. § 300aa–14(b)(3)(A) specifies that an encephalopathy may manifest itself as a "change[ ] lasting at least 6 hours in level of consciousness." Indeed there is no more profound and permanent change in level of consciousness than death. The Claims Court thus erred in stating that "the only possibly statutorily relevant symptom of an encephalopathy alleged by petitioners here (other than the crying ...), was limpness." Op. at 1013–1014.

well-within the statute's time frame for an encephalopathy. This is not a case involving a child who received a shot, cried, and then years later became disabled, and parents who are attempting to locate an encephalopathy within 3 days of the shot by virtue of the crying. All the "dramatic" aspects of this case occurred within one day. Because the death occurred within the 3 day table injury time frame for an encephalopathy, see 42 U.S.C. § 300aa–14(a)(I)(B), Dr. Cox's reliance on the fact of death as evidence of an encephalopathy necessarily places the encephalopathy within the three day time frame as well.

In this regard, the special master legally erred to the extent he concluded that 42 U.S.C. § 300aa–14(b)(3)(A) required judgment in this case for HHS as a matter of law. Here, again, the evidence was not just crying but a history including death, interpreted by a medical expert, supported by medical records, none of which was contradicted by HHS.

The evidence presents no factual dispute as to whether Matthew suffered an encephalopathy, and on the undisputed evidence of record we therefore hold that the Jays are entitled to judgment as a matter of law that they have carried their burden of proving a table injury under 42 U.S.C. §§ 300aa–11(c)(1)(C)(i) (petition alleging table injury), 300aa–13(a)(1)(A) (petitioners' burden of proving causation), and 300aa–14(a)(I)(B) (encephalopathy).

■ B. The Jays also alleged in their petition that the DPT vaccine in fact caused Matthew to die. The undisputed facts of record in support of this include that an otherwise healthy child received a DPT shot; the DPT shot caused fever, directly or indirectly limpness, and intermittent inconsolable extended screaming; the child missed his normal nightly feeding; the child died within 18 hours of the shot; the autopsy was inconclusive; and a medical expert testified, uncontradicted, that the DPT shot caused the death, the medical theory being that an encephalopathy occurred. Unlike the statutory limitations existing in a determination of a table injury, see 42 U.S.C. § 300aa–14(b), none of the above facts may be statutorily

excluded in determining generally whether the DPT vaccine in fact caused Matthew to die. Analogous to tort law, causation in fact requires only "proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury [here, death]. A reputable medical or scientific explanation must support this logical sequence of cause and effect." Grant v. Secretary of the Dep't of Health and Human Servs., 956 F.2d 1144, 1148 (Fed.Cir.1992). In this case the above has been presented, uncontradicted. We therefore hold as a matter of law that on the undisputed facts of record a reasonable person could not conclude that the Jays failed to prove that the DPT vaccine was the likely cause of Matthew's death. Cf. Marsden v. Patane, 380 F.2d 489, 492 (5th Cir.1967) (negligence determinable as a matter of law).

Accordingly, the Jays are entitled also to judgment as a matter of law that they have carried their statutory burden of proving causation under 42 U.S.C. §§ 300aa–11(c)(1)(C)(ii) (petition alleging causation in fact), and 300aa–13(a)(1)(A) (petitioners' burden of proving causation).

■ C. "A successful showing of legal causation or causation in fact does not end the question" of compensation. Grant, 956 F.2d at 1149. After a petitioner establishes legal causation (table injury) or causation in fact, there still remains the statutorily separate inquiry under 42 U.S.C. § 300aa–13(a)(1)(B) whether an alternative causation has been proved by HHS. See id. In this case, however, HHS presented no evidence of alternative causation, and HHS admits that it has none. Therefore, there being no dispute as to alternative causation, the Jays are entitled to judgment as a matter of law in this regard.

## CONCLUSION

For the foregoing reasons we hold that the special master erred in granting summary judgment in favor of HHS and in denying summary judgment in favor of the Jays on the issue of liability. We therefore reverse the decision of the Claims Court which upheld the determination of the special master,

and remand for an award of compensation to the Jays.

REVERSED and REMANDED.