**Maryann HELLENBRAND–SZTABA,
and Gordy Frank Hellenbrand,
Petitioners,**

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,
Respondent.**

No. 91–572 V.

United States Court of Federal Claims.

March 25, 1996.

William David Allen, Washington, DC, appeared for petitioners.

Catharine Reeves, Department of Justice, Washington, DC, appeared for respondent.

**OPINION**

HODGES, Judge.

This action was brought under the National Vaccine Injury Compensation Program ("Vaccine Act"). 42 U.S.C. § 300aa–10 *et seq.* Petitioners appeal from the ruling of the Special Master denying compensation for the death of their son, Damien.

After a full evidentiary hearing, the Special Master ruled that petitioners failed to prove by a preponderance of the evidence that their son's death was caused by the table injury anaphylaxis (severe allergic reaction) or that his death was in any way caused by his Diphtheria, Pertussis, Tetanus immunization. Petitioners allege that the Special Master's denial of compensation was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Specifically, petitioners argue that the Special Master (1) applied an inappropriate standard of proof, (2) ignored evidence that decedent suffered the table injury encephalopathy, and (3) was biased against the petitioner's witnesses at the evidentiary hearing. We sustain the Special Master's ruling.

**SUMMARY OF THE CASE**

Damien Hellenbrand–Sztaba's only noted medical problem was that he had suffered seizures. One of these occurred after his receiving a Mumps, Measles, Rubella shot. He had three DPT shots without incident.

Damien received his fourth DPT shot on the afternoon of December 17, 1986. He was irritable after receiving the shot. At about 4:30 a.m. the next morning, Ms. Sztaba heard Damien cry out for her. She found Damien dead in his crib on December 18, 1986 at 8:45 a.m. Emergency Medical Technicians at the scene attempted to resuscitate the child but they were unsuccessful. Damien was approximately 21 months old at the time of his death.

The medical examiner listed the cause of death as "sudden death in childhood of undetermined etiology." The autopsy showed pulmonary edema (fluid in the lungs), a swollen brain, and heavy organs.

Experts from both sides agreed that eosinophil cells were present in Damien's lungs and in other areas of his body, and that the presence of eosinophils can indicate allergic reaction. They agreed that Sudden Infant Death Syndrome, as defined, does not occur in babies over the age of 12 months. They agreed that death caused by anaphylaxis typically occurs soon after the foreign substance is introduced.

The government's expert disagreed that the number of eosinophil cells present were sufficient to show that Damien suffered an allergic reaction, and she argued that cells

other than eosinophils would have been present had Damien suffered an allergic reaction. The government's expert was satisfied that the cause of death was not anaphylaxis but "unexplained." The Special Master relied on the government's expert to deny compensation.

## BURDEN OF PROOF UNDER THE VACCINE ACT

By enacting the National Vaccine Injury Compensation Program, Congress created a no-fault system for individuals who have suffered injuries and deaths thought to be caused by vaccines. 42 U.S.C. § 300aa–10 *et seq.* Two methods of proof exist under the Vaccine Act. If petitioner shows by a preponderance of the evidence that a table injury specified in the Vaccine Act occurred within the requisite time period, it is presumed that the injury was caused by the vaccine. Once this presumption arises, the special master may deny compensation only if a preponderance of the evidence shows that a specific factor other than the vaccine caused the injury. 42 U.S.C. § 300aa–13(a)(1). If causation-in-fact can be shown, petitioner is not limited under the statute to table injuries or times periods. 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I). The burden of proof for causation-in-fact is higher. If neither of these two methods of proof is successful, compensation under the Vaccine Act must be denied.

## ANALYSIS

A special master's decision cannot be set aside unless the decision is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. 42 U.S.C. § 300aa–12(e)(2)(B). We consider petitioners' arguments on appeal under this limited power of review.

### I. Standard of Proof

Petitioners argue that the Special Master applied an inappropriately rigorous standard of proof. The Special Master stated that petitioners "failed to demonstrate it more probable than not" that Damien suffered a table injury or that his death was caused by his DPT immunization. Essentially, petition-

ers dispute the Special Master's finding that they did not meet their burden of proof.

According to petitioners, the Special Master's findings are arbitrary and capricious for several reasons. First, they point to the undisputed fact that Damien died within 24 hours of receiving his fourth DPT shot. This was within the 24–hour limit for a table injury anaphylaxis. Second, they claim that the Special Master relied improperly on the government's expert witness. Third, they argue that the Special Master should have considered the fact that the government did not present an alternate theory of causation.

### A. Death within 24 Hours

■ Death within the requisite time period is insufficient to establish a table injury or causation-in-fact. *Hellebrand v. Secretary of Dep't of Health & Human Servs.,* 999 F.2d 1565, 1570 (Fed.Cir.1993). In *Hellebrand,* the Claims Court reversed the special master and granted compensation on the basis that death from unknown causes within the requisite time period entitled the petitioner to compensation. *Id.* at 1568. The Federal Circuit reversed, construing section 300aa–14(a)(I) of the Vaccine Act to require petitioner to prove that "death occurred as a sequela of that injury or condition" alleged as a table injury. *Id.,* 999 F.2d at 1570.

The Special Master found in this case that death was not caused by anaphylaxis. Petitioners' argument that the fact of death should have been dispositive is not valid under case law.

### B. Expert Witnesses

■ A special master is not bound by the opinions of expert witnesses. 42 U.S.C. § 300aa–13(b)(1) (Any "diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court."); *see also Aea v. U.S.,* 26 Cl.Ct. 878, 881 (1992), *aff'd,* 6 F.3d 787 (Fed.Cir.1993). A special master need only provide a rational explanation for relying on a particular expert. *Summar v. Secretary of Dep't of Health & Human Servs.,* 24 Cl.Ct. 440, 444–45 (1991). A special master may reject expert testimony if the special master finds another expert to be more persuasive. *Mills*

*v. Secretary of Dep't of Health & Human Servs.*, 27 Fed.Cl. 573, 578 (1993).

■ In this case, the Special Master provided an adequate explanation for why he relied on the government's expert witness. The Special Master discussed the points of contention between the experts in some detail. He found the government expert to be "more candid and more persuasive," and found "basic and glaring defects in the scenario of petitioners' experts." Given his broad discretion in this area and the specific reasons given for relying on the government witness, the Special Master's findings cannot be considered arbitrary and capricious.

## C. Proof of Alternate Cause of Death

■ An unexplained death may not be used as an alternate theory of causation to rebut an established table injury. 42 U.S.C. § 300aa–13(a)(2)(A) (Government rebuttal "may not include any idiopathic, unexplained, unknown, hypothetical, or undocumentable cause, factor, injury, illness, or condition."). However, the Federal Circuit has construed this section to apply only after a petitioner has demonstrated a table injury by a preponderance of the evidence. *See Bradley v. Secretary of Dep't of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed.Cir.1993). *See also Hossack v. Secretary of Dep't of Health & Human Servs.*, 32 Fed.Cl. 769 (1995); *Greene v. Secretary of Dep't of Health & Human Servs.*, 19 Cl.Ct. 57, 61 (1989). Because the Special Master found that petitioners failed to prove a table injury, the burden of proving alternate causation never shifted to the government. Petitioners' argument must fail for this reason.

Evidence may exist to support a finding that Damien suffered from anaphylaxis which led to his death. The fact that Damien died within 24 hours of receiving the shot is troubling. However, we may not substitute our judgment for that of the Special Master in such circumstances. The Special Master had the opportunity to evaluate the witnesses'

demeanor and to judge their credibility. We have no such opportunity.

## II. Waiver of Encephalopathy Argument

■ Petitioners argue that the Special Master ignored evidence that Damien suffered another table injury, Encephalopathy. They did not make this argument before the Special Master. Petitioners argue that facts supporting the encephalopathy argument were raised before the Special Master, so they did not waive this argument. Petitioners did waive the encephalopathy argument, and we cannot address it now.

■ "Any fact or argument not raised *specifically* in the record before the special master shall be considered waived and cannot be raised by either party" on review. RCFC, Appendix J, Vaccine Rule 8(f) (emphasis ours). To preserve an issue for review, petitioners must argue the issue below. *See Weddel v. Secretary of Dep't of Health & Human Servs.*, 23 F.3d 388, 390 n. 2 (Fed. Cir.1994) (Failure to raise equitable tolling argument before the special master was fatal to petitioner's case); *Jay v. Secretary of Dep't of Health & Human Servs.*, 998 F.2d 979, 983 (Fed.Cir.1993) (Shock collapse issue waived after petitioners failed to pursue or defend the theory raised in petition). An argument is not preserved by pointing to facts supporting the argument in the record. Neither Petitioners' counsel nor their expert witnesses made reference to encephalopathy. We must find that Petitioners waived the issue of whether Damien suffered the table injury encephalopathy.[1]

## III. Lack of Evidence Showing Bias

Petitioners argue that the Special Master was biased against the petitioners' witnesses at the evidentiary hearing. No evidence of bias exists in the record, and such an argument is improper.

## CONCLUSION

We cannot set aside the Special Master's decision for any of the reasons advanced by

---

1. This may be a harsh result in the circumstances of this case. Congress delegated to this Court the authority to promulgate rules recommended by the special masters that would carry out the aims of the Act. *See* § 300aa–12(d)(2).

Rule 8(f) states that arguments considered by this court upon review must have been made "specifically" to the Special Master. While this rule remains in place, we may not consider arguments appearing for the first time on review.

the petitioners. That decision is sustained. No costs.