DYK, Circuit Judge,
dissenting.
The majority today holds that petitioners seeking compensation under the National Childhood Vaccine Injury Compensation Program (the “Vaccine Act”) must establish, as essential elements of a prima facie showing of causation in off-Table cases, both (1) a “proximate temporal relationship between [the] vaccinations and the onset of [injury],” Ante at 1356; and (2) an absence of “alternative causes” of the injury. Ante at 1357. While there are some unfortunate dicta in our cases that might support the majority’s approach, our earlier holdings and the statute itself are to the contrary. The majority’s interpretation of the Vaccine Act approves the efforts of the Special Masters to impose unwarranted bright-line tests for causation under the statute. I respectfully dissent.
I
This case involves the five-prong test for causation in off-Table cases announced by the Chief Special Master in Stevens v. Secretary of the Department of Health and Human Services, No. 99-594V, 2001 WL 387418 (Ct.Cl.Spec.Mstr. Mar. 30, 2001). That test required petitioners to establish: (1) medical plausibility; (2) confirmation of medical plausibility from the medical community and literature; (3) an injury recognized by the medical plausibility evidence and literature; (4) a medically-aceeptable temporal relationship between the vaccination and the onset of the alleged injury; and (5) the elimination of other causes. Id. at *23-*26. We have already held that prongs (2) and (3) of this test are inconsistent with the statute. Althen v. Sec’y of Health & Human Servs., 418 F.3d 1274, 1279-81 (Fed.Cir.2005). We have also held invalid a sixth Special-Master-created rule requiring petitioners, in order to demonstrate causation in fact in off-Table cases, to supply at least one of four types of evidence: “epidemiologic studies; re-challenge; presence of pathological markers or genetic predisposition; or general acceptance [of the causal relationship] in the scientific and medical communities _” Capizzano v. Sec’y of Health & Human Servs., 440 F.3d 1317, 1323 (Fed.Cir.2006). This case for the first time presents the issue of the validity of prongs (4) and (5) of the Stevens test. The Special Master in this case rejected the petitioners’ claim based on these two requirements. See Pafford v. Sec’y of Health & Human Servs., No. 01-0165V, 2004 WL *1361 1717359, at *7, *9 (Ct.Cl.Spec.Mstr. July 16, 2004).
II
Here, the petitioners put on substantial evidence of causation. Their expert, Dr. Levin, testified that it is generally accepted in the medical community that “the symptoms of Still’s disease are caused by cytokine expression.” Levin and the government’s expert agreed that “vaccines induce cytokine production.” See id. at *5. As to Richie Pafford’s case, Levin stated that “‘immune activation caused by DPT vaccinations is in turn caused by the release of the very cytokines that are elevated in Still’s disease,’” and that although “the medical field had yet to develop testing sophisticated enough to identify specific cytokines” in patients, “indirect tests performed [on Richie] ... correlated] with the clinical symptomatology.” Id. at *6. Levin concluded that “ ‘the only factor that seems associated with the development of this disease process [in Richie Pafford] is the vaccination.’ ” Id. The government did not introduce evidence to establish causation by any factor unrelated to the vaccinations. Id. at *8.
Acknowledging that it was a close case, the Special Master “painstakingly looked for the feather in Petitioners’ argument that would tip the scales” as to causation in fact, but concluded that “the lack of any defined time period in which one would expect to see the onset of Still’s disease subsequent to a triggering event,” and the petitioners’ failure to rule out causation by other “contemporaneous events,” required denial of compensation. See id. at *9. The majority holds that this was proper.
Ill
Prong (4) of the Stevens test requires evidence of “a medically acceptable temporal relationship between the vaccination and the onset of the alleged injury” which “is defined through peer-reviewed literature .... ” Stevens, 2001 WL 387418, at *25. To meet this requirement, “petitioners must satisfactorily prove that the onset occurred within a time frame deemed medically appropriate according to the scientific or medical evidence ....” Id. The Chief Special Master relied on no decision from this court for the requirement, but rather on other Special Master decisions and reports issued by the National Academy of Sciences’ Institute of Medicine (“IOM”). See id. at *25 n. 78, *26 & n. 79.
The majority states that “the Special Master also required proof of a proximate temporal relationship between Pafford’s vaccinations and the onset of Still’s disease commensurate with the third prong of the Althen test.” Ante, at 1356. The majority relies on the statement in Althen, 418 F.3d at 1281, that the “medically acceptable temporal relationship” requirement “is merely a recitation of this court’s well-established precedent.” The well-established precedent to which Althen was referring was apparently Lampe v. Secretary of Health and Human Services, 219 F.3d 1357 (Fed.Cir.2000), Shyface v. Secretary of Health & Human Services, 165 F.3d 1344 (Fed.Cir.1999), Hodges v. Secretary of Health & Human Services, 9 F.3d 958 (Fed.Cir.1993), and Grant v. Secretary of Health & Human Services, 956 F.2d 1144, 1149 (Fed.Cir.1992). These cases were cited in the Althen opinion.
In fact, the precedent cited in Althen merely stands for the proposition that the temporal relationship between vaccination and injury may he a pertinent factor to consider in determining causation. In Lampe, for example, we stated only that “[t]he passage of time between an event *1362 and the consequences that are alleged to flow from it is often significant,” not that a medically significant time interval is required. 219 F.3d at 1366. And in Hodges, we did not suggest that evidence of a temporal relationship is required — we held only that where the petitioners failed to prove a Table injury, literal temporal proximity to vaccination and the absence of other possible causes, alone, were insufficient to establish causation in fact for an off-Table injury. See 9 F.3d at 960-61. In Shyface, we addressed the standard for proving causation in off-Table cases in great detail and never once suggested a “medically established temporal relationship” requirement. Instead, we held that the petitioner must prove “that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury.” 165 F.3d at 1352. Nor did we suggest in Shyface that a temporal relationship is necessary to establish either the but-for or substantial factor elements of causation. See id. at 1352-53.
Significantly, in Grant, we rejected a temporal requirement. There, the petitioner sought compensation for encephalopathy-induced infantile spasms that began 10 days after a Quadrigen vaccination.[1] Grant, 956 F.2d at 1146-47. Because the spasms occurred outside the Table time period (3 days, 42 U.S.C. § 300aa-14(a)), the petitioner was required to establish causation in fact. The Special Master nevertheless found causation, relying on “evidence that pertussis as part of the Quadri-gen vaccine has a heightened potential to cause ... exactly the symptoms that occurred to [the petitioner] ....” Id. at 1149. On appeal, we rejected the government’s argument, based on epidemiological studies, that the “lack of statistical proof [of an association between DTP vaccine and infantile spasms 10 days later] .... is dis-positive on the issue of causation.” Br. of Secretary of Health & Human Servs., Grant, 956 F.2d 1144, at 15-17; see Grant, 956 F.2d at 1148. We concluded that “[t]hese epidemiological studies ... are not dispositive of the actual causation question in this case.” Grant, 956 F.2d at 1149. We affirmed the award of compensation, observing that:
[T]he Chief Special Master did not rely on expert testimony based on temporal association and studies of less direct relevance. Instead, the Chief Special Master relied on a preponderance of relevant scientific and medical evidence about the particular nature of Quadri-gen. This court discerns nothing arbitrary, capricious, or unlawful in that reliance.

Id.

In rejecting a temporal requirement for off-Table cases, Grant was entirely consistent with the statute. Indeed, the “medically acceptable temporal relationship” requirement is plainly contrary to the Vaccine Act. As we have repeatedly recognized, the purpose of the Vaccine Injury Table was to afford petitioners a presumption of causation for particular types of injury for which there is a medically accepted temporal relationship with vaccination.[2] Every Table injury has an *1363 associated time period. See 42 U.S.C. § 300aa-14(a) (2000). Congress explained that scientific research might establish additional temporal relationships which, if found, would result in amendments to the time periods specified in the table:
The Committee anticipates that the research on vaccine injury and vaccine safety now ongoing and mandated by this legislation will soon provide more definitive information about the incidence of vaccine injury and that, when such information is available, the Secretary or the Advisory Commission on Childhood Vaccines ... may propose to revise the Table ....
H.R. Rep. 99-908, at 18 (1986), os reprinted in 1986 U.S.C.C.A.N. 6344, 6359. Thus the Vaccine Act provides that the Secretary of Health and Human Services may by regulation “add to, or delete from, the list of injuries ... or may change the time periods for the first symptom or manifestation of the onset ... of any such injury ...” in the Table. 42 U.S.C. § 300aa-14(c)(3) (2000); see 42 U.S.C. § 300aa-14(c)(1).
In 1995, for example,[3] the Secretary changed the Table time interval between administration of pertussis vaccines and “anaphylaxis or anaphylactic shock” from 24 hours to 4 hours, explaining that “the pediatric literature is clear in stating that severe anaphylactic reactions occur immediately with antigen exposure and rarely show their first manifestation after 4 hours.” 60 Fed.Reg. 7678, 7686 (Feb. 8, 1995). The Secretary also changed the Table time interval between administration of the measles, mumps, and rubella vaccine and the onset of encephalopathy from 15 days to “5 to 15 days,” explaining that “[sjince viral replication is required for a viral vaccine-associated encephalopathy, a window for the expected time of onset is appropriate.... [and] the 1991 [National Vaccine Advisory Committee] Subcommittee felt there was strong support in the literature to narrow the timeframe as above.” Id. at 7692.
However, scientific research on vaccine-related injuries remains incomplete; thus it is not always possible to identify the “medically accepted temporal relationship.” In a 2000 report on the progress of the Vaccine Act, Congress noted that “[o]f the 76 adverse events IOM reviewed [in 1991 and 1994] for a causal relationship [with vaccination], 50 (66 percent) had no or inadequate research.” H.R. Rep. 106-997, at 5 (2000).
In recognition of the uncertain state of scientific knowledge, the statute provides what is known as an off-Table remedy, allowing recovery where the petitioner can establish that the injury “was caused by a vaccine” listed in the Table, even though the particular injury is not listed in the Table. 42 U.S.C. §§ 300aa-ll(c)(l)(C)(ii)(D & (II) (2000). Another important purpose of allowing recovery for off-Table injuries was to allow a petitioner *1364 to make a claim for an injury listed in the Table where the injury was not manifested during the medically accepted time frame set forth in the Table.[4] The Vaccine Act specifically authorizes compensation for petitioners who “sustained ... any illness, disability, injury, or condition set forth in the Vaccine Injury Table the first symptom or manifestation of the onset of ... which did not occur within the time period set forth in the Table but which was caused by a vaccine referred to in subparagraph (A).” 42 U.S.C. § 300aa-ll(c)(l)(C)(ii)(II) (2000) (emphasis added). Thus the statute clearly contemplates that causation in fact may be established in off-Table cases without showing the “medically accepted temporal relationship” listed in the Table.[5]
This purpose would be directly thwarted if proof of a medically accepted timeframe were required to show causation in off-Table cases. But that is exactly what the majority requires here. In this case, there was substantial evidence regarding the biological mechanism of causation, even though the experts did not identify a medically accepted temporal relationship. See Pafford, 2004 WL 1717359, at *5-*6. Under the majority’s holding, any petitioner who fails to establish a medically accepted temporal relationship automatically lacks an essential element of their prima facie case for causation in fact. That holding is inconsistent with the clear provisions of the statute and our prior holdings interpreting it.
Ill
The Special Master here concluded that “Muling out other potential causes is an essential element” of the petitioner’s case. Pafford, 2004 WL 1717359, at *4. The Court of Federal Claims, after reviewing our cases and the Chief Special Master’s decision in Stevens, concluded that in off-Table cases, the “initial burden of proof regarding alternative causation [is] on the petitioner ... as part of establishing a prima facie case of causation-in-fact.” Pafford v. Sec’y of Health & Human Servs., 64 Fed.Cl. 19, 35 (2005).[6] The majority, in sustaining the Special Master’s *1365 decision here, appears to agree. As with the temporal relationship prong, there is at least a fragment of dictum supporting this view. See Munn v. Sec’y of Health & Human Services, 970 F.2d 86B, 865 (Fed.Cir.1992) (“The claimant must prove by a preponderance of the evidence that the vaccine, and not some other agent, was the actual cause of the injury.”). Since the dictum in Munn, however, we have unequivocally held that, under section 300aa-13(a)(1)(B), the government bears the burden of proof regarding causation by “factors unrelated” to vaccination.
Section 300aa-13(a)(l) of the Vaccine Act provides, in pertinent part:
Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—
(A) that the petitioner has demonstrated by a preponderance of the evidence [a Table injury or causation in fact], and
(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.
42 U.S.C. § 300aa-13(a)(l) (2000) (emphasis added). As we have recognized, the plain language and structure of this provision establish that the petitioner’s burden to make a prima facie showing of either presumptive or actual causation set out in section 300aa-13(a)(l)(A) does not include the burden of proof regarding “factors unrelated” to vaccination set out in section 300aa-13(a)(l)(B) — “[t]hese are two separate inquiries under the statute.” Grant, 956 F.2d at 1149 (“The Vaccine Act expressly separates the inquiry for alternative etiologies from the inquiry for causation”).
We have repeatedly held that the separate burden of proof regarding “factors unrelated” to vaccination belongs to the government in both Table and off-Table cases. See, e.g., Jay v. Sec’y of Health & Human Servs., 998 F.2d 979, 984 (Fed.Cir.1993) (section 300aa-13(a)(l)(B) requires a “statutorily separate inquiry ... [as to] whether an alternative causation has been proved by [the government].” (emphasis added)). In Knudsen v. Secretary of Health & Human Services, 35 F.3d 543 (Fed.Cir.1994), a Table case, the petitioners argued that the government failed to satisfy its burden of proof for its argument that the injury was caused by a viral infection rather than the vaccine. In defining the government’s burden under section 300aa-13(a)(l)(B), we held that “[t]he government was required not only to prove the existence of an infection (here viral), but also to prove by a preponderance of the evidence that the particular viral infection present in the child actually caused the table injury complained of.” Id. at 549. And in Shyface, an off-Table case, we rejected the government’s argument that the statute requires the petitioner to establish “ ‘that the vaccine is more likely than any other factor to have been directly responsible for the injury,’ ” 165 F.3d at 1349, and concluded that compensation was warranted because the petitioners made a prima facie showing of causation and the government “failed to prove that factors unrelated to the vaccine were principally responsible ....” Id. at 1353.
Indeed the Second Restatement of Torts, which we held in Shyface to be controlling in off-Table cases, 165 F.3d at *1366 1351-52, provides that the defendant bears the burden of proof on alternate causation. The Restatement describes the prima fa-cie showing of causation in cases involving more than one possible cause: “[i]f two forces are actively operating, one because of the actor’s negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor’s negligence may be found to be a substantial factor in bringing it about.” Restatement (Second) of Torts § 432(2) (1965). “[T]he burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.” Id. § 433B(1). But in cases involving multiple causes, the Restatement places the burden on the defendant to prove either “the apportionment” of the harm among the causes, or that one of the causes other than the defendant’s conduct actually caused the entirety of the harm to the plaintiff. Id. §§ 433B(2) & (3). Contrary to the majority’s view, the same allocation of burdens is required under the Vaccine Act.
IV
In summary, the majority incorrectly holds that petitioners, in order to make a prima facie case in off-Table cases, must establish a “medically accepted temporal relationship” between vaccine and injury and eliminate other possible causes of the injury. In doing so, the majority perpetuates causation requirements imposed on vaccine petitioners by the Special Masters, whose “role is to assist the courts by judging the merits of individual claims on a case-by-case basis, not to craft a new legal standard to be used in causation-in-fact cases.” Althen, 418 F.3d at 1281. This case should be remanded for adjudication under the correct legal standard.

. The Quadrigen vaccine combined diphtheria, pertussis, tetanus and polio vaccines in a single administration. Grant, 956 F.2d at 1145.

. See, e.g., Hodges, 9 F.3d at 961 (“Bring the case within the timetable and specifications of a Table Injury and the statute does the heavy lifting — causation is conclusively presumed.”); Grant, 956 F.2d at 1147 ("The Vaccine Table, in effect, determines by law that *1363 the temporal association of certain injuries with the vaccination suffices to show causation.”); Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1527-28 (Fed.Cir.1993) (quoting Grant, 956 F.2d at 1147). Notably, the Chief Special Master in Stevens relied on the Secretary’s 1995 explanation of the measles, mumps, and rubella vaccine/encephalopathy Table timeframe as an example of a "medically accepted temporal relationship.” See 2001 WL 387418, at *25 (citing 60 Fed. Reg. 7678, 7692).

. The Table was also revised in 1997 and 2002, 62 Fed.Reg. 7685 (Feb. 20, 1997); 67 Fed.Reg. 48558 (July 25, 2002), and is codified at 42 C.F.R. § 100.3.

. The Secretary, in reducing the pertussis vaccines/anaphylaxis Table time interval from 24 hours to 4 hours, noted that "[pjetitioners may receive compensation under the [Vaccine Act] if they prove their injury was caused by the vaccination, even if onset was after the 4 hours specified in the Table.” 60 Fed.Reg. at 7678.

. Congress made clear that it did "not intend ... to suggest that variance from the Table should act as a presumption against the petitioner but rather only that such a petitioner is not to be deemed eligible for compensation without further showings of causation.” H.R. Rep. 99-908, at 15.

. See also Pafford, 64 Fed.Cl. at 30 ("The Federal Circuit has instructed that an actual-causation vaccine petitioner 'must prove by a preponderance of the evidence that the vaccine, and not some other agent, was the actual case of the injury.' Munn, 970 F.2d at 863 (emphasis added). This would seem to engender the need for a petitioner to eliminate other possible causes of the condition (other than the vaccine) that exist in the record.”); id. petitionerf ] must eliminate other reasonably possible causes that exist in the record to meet its burden of establishing a prima facie case for causation-in-fact.”); id. at 35 ("[T]he overwhelming weight of authority in this Circuit is consistent with traditional notions of tort law that place an initial burden of proof regarding alternative causation on the petitioner ... as part of establishing a prima facie case of causation-in-fact.”); id. at 36 ("[I]n establishing his prima facie case of entitlement, the petitioner must discount other potential causal factors that the record reveals, because the required 'substantial factor’ analysis requires as much.”); id. at 36 ("... it was incumbent upon [the petitioners] to discount the role of these potential alternatives in order to prove that the vaccines were, *1365 more likely than not, the cause of Richelle’s Still’s disease.").